UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARLON J. WILLIAMS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-96** |
| **MARLIN N. GUSMAN, ET AL.** | **SECTION "I"(3)** |

### REPORT AND RECOMMENDATION

Plaintiff, Marlon J. Williams, Jr., a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. § 1983 against Sheriff Marlin N. Gusman, Mr. Gibson, Ms. Weaver, Bonita J. Pittman, Ms. Fare, and Ms. Steele.  In this lawsuit, plaintiff challenged the conditions of his confinement within the Orleans Parish Prison system.

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on February 24, 2015.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

At that hearing, plaintiff made allegations and asserted claims not included within his original complaint. Therefore, the Court ordered him to file an amended complaint which was to "include a short and plain statement of each claim plaintiff wishes to assert against each defendant, along with the necessary factual allegations supporting his claims."[1]  Plaintiff attempted to comply with that order, filing a document which was deemed deficient by the Clerk of Court.[2]  After reviewing that document, the undersigned issued an order directing defense counsel to provide the Court with plaintiff's medical records and grievance records.[3]  Those records have been provided and filed into this federal record.[4]

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[5]  Regarding such lawsuits, federal law further requires:

---

[1]  Rec. Doc. 8.

[2]  Rec. Docs. 9 and 10.  Out of an abundance of caution, however, the undersigned will consider the filing to be an amended complaint and address the claims asserted therein in this Report and Recommendation.

[3]  Rec. Doc. 11.

[4]  Rec. Doc. 13.

[5]  "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." <u>In re</u> <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint, as amended,[6] and fully considering his <u>Spears</u> hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claims

In his complaint, plaintiff stated his claim as follows: "Each official has ignored inmate condition and still failing to reinvigorate the condition of the population."[7] When asked to explain that claim at the <u>Spears</u> hearing, plaintiff testified that the living conditions at the jail were "real bad," with mold present in the facility and rust on the dining tables.  He alleged that the conditions

---

[6] The court must liberally construe a *pro se* civil rights complaint.  <u>See</u> <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994).

[7] Rec. Doc. 1, p. 5.

caused him to "cough up blood" and nothing was done when he submitted sick call requests. He further testified that he was "jumped" by inmates who stole his personal property.

In his amended complaint,[8] plaintiff added the following details:

- "On 11-13-14 I had just received my store order and I sat it on my bed and went to use the restroom when I came back my store was stolen and then I got jumped by ten inmates after that nothing was done to them and I never got any of my property back. I have nothing. They have cameras on the tier why wasn't anything done?"

- "I have put in several sick calls about sinus problems and chest pains due to the exposure of mold in this building but somehow I never get seen for my problems but when I check inmate account I'm billed several times for it. Why is this it seems like I keep getting charged but never seen."

- "I have become very sick living around the mold in this building and I have put in several sick calls but they never make it past the nurse to the doctor why is this? I know I've been filling out sick calls and I've been billed but I never get helped. I believe someone isn't turning in my sick calls."

- "I want to complain about the mildew in the toilets and in the sinks we have to drink out of."

- "I want to complain about the showers that run all day and night causing us to have sinus problems."

- "I want to complain about the mildew and mold on the floors and the showers."

---

[8] Rec. Doc. 9.

5

- "I want to complain about the lead paint that's chipped and rusty on the tables that we have to eat on."
- "I want to complain about inmates sleeping on the floors due to overcrowding."

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015). For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib

v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Therefore, the mere fact that mold, mildew, and rust are present does not warrant relief. See, e.g., Pitt v. Weaver, Civ. Action No. 15-360, 2015 WL 2452348, at *7 (E.D. La. May 21, 2015) (rejecting claim that the "dining table was rusty"; "the presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action"); Bean v. Pittman, Civ. Action No. 14-2210, 2015 WL 350284, at *4 (E.D. La. Jan. 26, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Mitchell v. Jefferson Parish Correctional Center, Civ. Action No. 13-4963, 2013 WL 6002770, at *6 (E.D. La. Nov. 12, 2013); Sneeze v. Terrebonne Parish Sheriff's Office, Civ. Action No. 11-987, 2011 WL 2413464, at *3 (E.D. La. May 9, 2011), adopted, 2011 WL 2311867 (E.D. La. June 10, 2011); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Plaintiff's complaint concerning the plumbing problem fares no better. The Constitution simply does not protect inmates from "life's occasional inconveniences" of that type. See Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Pitt v. Weaver, Civ. Action No. 15-360, 2015 WL 2452348, at *4 (E.D. La. May 20, 2015); McKinney v. Gusman, Civ. Action No. 14-2988, 2015 WL 2341719, at *3 (E.D. La. May 13, 2015); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015).

With respect to plaintiff's allegation that the jail was overcrowded, there is no contention that the overcrowding was imposed as a form of punishment. "[I]t has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment." Chavera v. Allison, No. 1:08cv256, 2009 WL 1011157, at *5 (S.D. Miss. Apr. 15, 2009); see also Maddox, 2015 WL 1274081, at *4. Further, in any event, conclusory allegations of overcrowding are insufficient to establish a constitutional violation. See, e.g., Skinner v. D'Cunha, 544 Fed. App'x 345, 346 (5th Cir. 2013), cert. denied, 134 S. Ct. 524 (2013); Maddox, 2015 WL 1274081, at *4; Robertson v. LeBlanc, Civ. Action No. 13-171, 2014 WL 688979, at *5 (M.D. La. Feb. 20, 2014); Davis v. St. Charles Corr. Center, Civ. Action No. 10-98, 2010 WL 890980, at *6 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009). This is not changed by plaintiff's allegation that the overcrowding resulted in some inmates sleeping on the floor. Requiring inmates to place their mattresses on the floor when no bunks are available is not unconstitutional "because the Constitution does not require elevated beds." Pitt, 2015 WL 2452348, at *3; see also Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); accord Sanders v. Kingston, 53 Fed. App'x 781, 783 (7th Cir. 2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008).

Accordingly, for all of these reasons, plaintiff's claims concerning the physical conditions at the jail should be dismissed.

Turning now to plaintiff's claim that he received no medical care for the physical ailments which allegedly resulted from those jail conditions, the undersigned notes that claim should likewise be dismissed for the following reasons.

As an initial matter, the Court notes that plaintiff has not named a proper defendant with respect to a medical claim. There is no suggestion that any of the named defendants played any role in denying plaintiff medical care. Moreover, they do not work in the jail's medical department, and, although Gusman and Pittman hold supervisory positions within the Orleans Parish Prison system, they cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of strict liability[9] or vicarious liability.[10]

In any event, it is clear that, even if plaintiff had named a proper defendant or were allowed another opportunity to amend his complaint to attempt to name one, his underlying medical claim would still fail. Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

---

[9] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[10] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

*Even if* the ailments about which plaintiff complained in this lawsuit rose to the level of serious medical needs,[11] his allegations are nevertheless still insufficient to state a claim of deliberate indifference.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here. In the instant case, the Court ordered the Orleans Parish Sheriff's Office to produce copies of plaintiff's medical records, and those records have been filed

---

[11] The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

10

into this federal record.[12] Those records reflect that plaintiff received continued care for a variety of medical conditions while incarcerated at Orleans Parish Prison, including but not limited to the ailments he mentioned in this lawsuit. With respect to the specific ailments mentioned herein, the records include the following information:

| | |
|---|---|
| 12/19/14 | The nurse collected a sick call request from plaintiff in which he complained of coughing and problems breathing. On that same day, he was referred to the jail doctor. |
| 1/7/15 | Plaintiff was seen in the jail medical department requesting pain medication for shoulder, neck, and back pain and also complaining of scabies; however, no other problems were mentioned. |
| 1/21/15 | The nurse collected a sick call request from plaintiff in which he complained of a "really bad sore throat" and "coughing up blood." On that same day, he was referred to the jail doctor. |
| 1/22/15 | The nurse collected a sick call request from plaintiff in which he complained that he was having trouble breathing and had a sore throat. On that same day, he was again referred to the jail doctor. |
| 1/23/15 | Plaintiff was seen in the jail medical department requesting pain medication for shoulder pain; however, no other problems were mentioned. |
| 1/28/15 | Plaintiff was again seen in the jail medical department for a boil on his cheek; however, no other problems were mentioned. |

---

[12] Rec. Doc. 13. Copies were also provided to plaintiff for his use in this action.

| | |
|---|---|
| 2/4/15 | Plaintiff was again seen in the jail medical department for various ailments including headaches and nasal problems. He was prescribed Mobic, Zyrtec, and nasal spray. |
| 3/17/15 | Plaintiff was again seen in the jail medical department for headaches, nasal stuffiness, and bronchitis. He was prescribed Amoxicillin, ibuprofen, Zyrtec, and nasal spray. |
| 4/22/15 | Plaintiff was again seen in the jail medical department for headaches, sinus allergies, and bronchitis. He was prescribed Zithromax, Zyrtec, ibuprofen, and nasal spray. |

In addition to the foregoing medical complaints, plaintiff sought and was provided treatment for various other physical and mental health problems. Over the course of his confinement, he also received numerous other medications, including Bactrim, Ivermectin, Neurontin, Bactroban, and Aristocort.

In light of the foregoing, it is evident that plaintiff's medical complaints were not ignored. On the contrary, he was repeatedly examined after submitting sick call requests, and he was treated with a variety of medications. In light of that ongoing treatment, it is unclear what additional medical care plaintiff believes was necessary. However, even if he is of the opinion that more should have been done for him, that is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment."

Estelle v. Gamble, 429 U.S. 97, 107 (1976).  Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges.  Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions.  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion is not changed by the fact that plaintiff's ailments may not have been cured.  Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.

13

Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, his medical claim should be dismissed.

The Court next notes that plaintiff's claims concerning his attack at the hands of other inmates should likewise be dismissed. It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, again, such a claim is actionable only if the defendants have acted with "deliberate indifference." As the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which

> the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

Further, it must be remembered that prison officials are expected to provide only "reasonable," not "absolute," safety. See, e.g., Zara v. Strain, Civ. Action No. 09-3919, 2011 WL 723409, at *8 n.22 (E.D. La. Feb. 22, 2011) ("[P]laintiff's claims seemed to be based on a premise that prison administrators are at fault for random attacks unless they have taken all conceivable precautions to ensure the absolute safety of all inmates regardless of the actual likelihood of serious harm. That is not the law. While prison officials must clearly make reasonable efforts to formulate policies to provide a safe environment, they simply cannot ensure that all inmates will at all times be absolutely safe from random, unanticipated attacks."), aff'd, 458 Fed. App'x 393 (5th Cir. 2012); Verrette v. Randolph, Civ. Action No. 08-1200, 2009 WL 103715, at *4 (E.D. La. Oct. 22, 2008) (adopted by Feldman, J., on Jan. 13, 2009); Wolters v. Federal Bureau of Prisons, No. 08-CV-0837, 2008 WL 4558346, at *2 (W.D. La. Sept. 19, 2008) (adopted by Drell, J., on October 9, 2008), vacated in part on other grounds, 352 Fed. App'x 926 (5th Cir. 2009). To require "absolute" safety would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the

distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

Campbell v. Anderson, 335 F. Supp. 483, 486 (D. Del. 1971); accord Farmer v. Brennan, 511 U.S. 825, 858-89 (1994) (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed, "[t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals." McKnight v. Livingston, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007).

Here, plaintiff does not suggest that the attack on him was anything other than a random act of violence. Further, there is no indication that he personally was particularly susceptible to being attacked or that prison officials were made aware of and yet were deliberately indifferent to his need for protection. Therefore, while the attack is undeniably unfortunate, the mere fact that it occurred, without more, is not evidence of a *constitutional* violation.

Lastly, the Court notes that plaintiff's claim concerning the theft of his property by other inmates also must be dismissed. As the United States Sixth Circuit Court of Appeals has explained, an inmate's "allegation that other inmates stole his property fails to state a claim against the prison officials because the prison's negligence in allowing the theft is not a 'taking' for purposes of the

Fourteenth Amendment." <u>Dellis v. Corrections Corp. of America</u>, 257 F.3d 508, 511 (6th Cir. 2001); <u>accord</u> <u>Lucien v. Johnson</u>, 61 F.3d 573, 576 (7th Cir. 1995).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[13]

New Orleans, Louisiana, this twenty-second day of September, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.